## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

JOSEPH COMPERE,
an individual,

                                                  Case No.:

       Plaintiff,

v.

WELLS FARGO BANK N.A.,
a national association,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

       Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, JOSEPH COMPERE (hereinafter, "Plaintiff"), by

and through the undersigned counsel, and hereby sues Defendants, WELLS FARGO

BANK, N.A. (hereinafter, "Wells Fargo"), EQUIFAX INFORMATION SERVICES

LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC.

(hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union")

(hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.     This is an action brought by an individual consumer for damages for

Wells Fargo's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Wells Fargo improperly credit-reported and subsequently verified objectively-inaccurate information related to a consumer debt account allegedly owed to Wells Fargo, on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union, respectively.

2.     Additionally, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to incorrectly report such accounts as derogatory, negative, or adverse accounts despite Plaintiff's repeated disputes to Equifax, Experian, and Trans Union explaining and proving that such account should be reported as paid and closed, and any alleged past-due balance was the result of identity theft and fraud.

## JURISDICTION, VENUE & PARTIES

3.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

4.     Defendants are subject to the jurisdiction of this Court, as Wells Fargo, Equifax, Experian, and Trans Union each regularly transact business in this District.

5.     Venue is proper in this District as Wells Fargo regularly conducts business in this District, and the acts and transactions described herein occur in this District.

6.     At all material times herein, Plaintiff is a natural person residing in Palm Beach County, Florida.

2

7.     At all material times herein, Wells Fargo is a national association with its principal place of business located at 420 Montgomery Street, San Francisco, California 94163.

8.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the State of Georgia, with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

9.     At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

10.    At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 W. Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

11.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

12.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

13.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

14.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

15.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

16.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds

4

that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

17.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

18.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees.  *Id.* at § o.

### FCCPA STATUTORY STRUCTURE

19.     The FCCPA is a state consumer protection statute, modeled after the federal FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

20.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.   15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

21.     Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

22.     Specifically, the FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." Fla. Stat. § 559.55(2) (emphasis added).

23.     For example, the FDCPA prohibits a person from communicating directly with a consumer known to be represented by legal counsel in an attempt to collect consumer debt when such person possesses said legal counsel's contact information and prohibits a person from falsely representing the amount, legal status or character of a debt.  See 15 U.S.C. §§ 1692c(a)(2) and e(2)(A).

24.     Similarly, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, prohibits a person from asserting a legal right that does not exist, and prohibits a person from communicating directly with a consumer known to be represented by legal counsel in an attempt to collect consumer debt when such person possesses said legal counsel's contact information. *See* Fla. Stat. §§ 559.72(7),

(9), and (18).

## <u>GENERAL ALLEGATIONS FOR FCRA</u>

25.     At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because he is an individual and allegedly obligated to pay a debt.

26.     At all material times herein, Wells Fargo, itself and through its subsidiaries, regularly services consumer credit and credit-reports information associated with the same in Palm Beach County, Florida.

27.     At all material times herein, Wells Fargo is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

28.     At all material times herein, Wells Fargo reports information concerning consumer loan accounts to Equifax, Experian, and Trans Union, including but not limited to, tradeline accounts related to an alleged Wells Fargo Account referenced by account number ending -6866 and/or -5320 (hereinafter, the "Account").

29.     At all material times herein, Wells Fargo furnishes incorrect and/or incomplete information concerning the Account to Equifax, Experian, and Trans Union—continuing after Plaintiff's repeated disputes—despite Wells Fargo knowing that the Account had been disputed and was informed by Plaintiff that the charges appearing on the Account were fraudulent.

30.     Wells Fargo furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the

consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

31.     At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.   Equifax, Experian, and Trans Union disburse such consumer reports to third parties under contract for monetary compensation.

32.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

33.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## GENERAL ALLEGATIONS FOR FCCPA

34.   At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by the FCCPA, Section 559.55(8)

because he is an individual and allegedly obligated to pay a debt.

35.     At all material times herein, Wells Fargo is a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

36.     At all material times herein, Wells Fargo is a "creditor" as defined by

the FCCPA, Section 559.55(5)

37.     At all material times herein, Wells Fargo attempts to collect an alleged consumer debt, including but not limited to, amounts allegedly due on a credit card account referenced by account number ending -6866 and/or -5320 (hereinafter, the "Debt").

38.     At all material times herein, the Debt is a consumer debt, an alleged obligation resulting from transactions for goods or services incurred primarily for personal, household, or family use.

39.     At all material times herein, Wells Fargo's conduct, with regard to the Debt complained of below, qualifies as a "communication" as defined by the FCCPA, Section 559.55(2).

40.     At all material times herein, Wells Fargo acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

41.     All necessary conditions precedent to the filing of this action occurred or Wells Fargo waived the same.

## FACTUAL ALLEGATIONS

## FRADULENT CREDIT CHARGES ON WELLS FARGO ACCOUNT

42.     In early November 2023, Plaintiff applied for a credit card with Wells Fargo, Wells Fargo approved Plaintiff's credit application, and Wells Fargo issued Plaintiff a credit card account (i.e., the Account).

43.     When Plaintiff opened the Account with Wells Fargo, Wells Fargo

advised that it would send the physical credit card to Plaintiff and the credit card should be delivered within seven (7) business days.

44.     After seven (7) business days passed and Plaintiff had not yet received the physical credit card, Plaintiff called Wells Fargo by phone and spoke with one of Wells Fargo's employees and/or representatives.   After Plaintiff advised that he had not yet received the physical credit card, Wells Fargo advised Plaintiff to wait another seven (7) business days.

45.     After *another* seven (7) business days passed and Plaintiff had not yet received the physical credit card, Plaintiff *again* called Wells Fargo by phone and spoke with one of Wells Fargo's employees and/or representatives.

46.     During the immediately-aforementioned phone call, Plaintiff again advised Wells Fargo that he had not yet received the physical credit card.

47.     In response, Wells Fargo's employee and/or representative advised that the physical credit card associated with the Account was delivered, activated, and charges were made on the Account.

48.     On the same phone call, Plaintiff immediately advised Wells Fargo that the physical credit card was never delivered to Plaintiff, that he did not active or use the credit card account, and as a result, such activity and charges must be the result of identity theft and fraud.

49.     In response, and after Wells Fargo transferred Plaintiff to Wells Fargo's fraud department, Wells Fargo advised Plaintiff that Wells Fargo would cancel the existing physical credit card, would issue a new credit card for the Account, and would

investigate the fraudulent charges made on the Account.

50.    Plaintiff received the replacement card for the Account about seven days after the above-referenced communication with Wells Fargo. Plaintiff proceeded to register the card with the Account through Wells Fargo's online portal and then promptly locked the Account until the fraud was addressed by Wells Fargo pursuant to its investigation.

51.    On the monthly billing statement for November 2023, fraudulent charges appeared and the Account balance was reported at $213.00 despite Plaintiff not making any purchases himself electronically or with the replacement physical card.

52.    Plaintiff once again called Wells Fargo to inquire why they had not yet removed the fraudulent charges, given that he did not feel comfortable using the Account until fraud issue was resolved. Wells Fargo told him to wait until they were finished conducting their investigation into the matter, which they advised would take up to ten business days.

53.    On or about November 29, 2023, Wells Fargo sent Plaintiff a letter verifying the fraudulent charges as valid and authorized and refusing to correct the balance reflected on the Account due to the fraudulent charges.

54.    More specifically, they alleged that Plaintiff incorrectly reported his original card as missing (never arriving) because "… it was activated from your home or business phone number."

55.    Clearly Wells Fargo failed to conduct a reasonable investigation in response to Plaintiff's First Dispute, because if Wells Fargo had conducted a

reasonable investigation, Wells Fargo would have known that the charges/transactions reported on the Account were fraudulent and the Account should have been reported with a zero-dollar balance.

56.     Wells Fargo's failure to conduct reasonable investigation into Plaintiff's First Dispute was unreasonable given the information provided in Plaintiff's First Dispute.

### PLAINTIFF'S FIRST DISPUTE TO EQUIFAX, EXPERIAN, AND TRANS UNION

57.     Following the receipt of the initial letter notifying Plaintiff that Wells Fargo would not be fixing any of the fraudulent charges reported on the Account, Plaintiff became concerned with how the false reporting would affect his credit score and how it appeared on his credit reports.

58.     On or about early December 2023, Plaintiff called Experian to inform them that the Account was currently being disputed with Wells Fargo and any activity/transactions that appeared under the Account were fraudulent.

59.     Plaintiff advised Experian to address the inaccurate reporting and that the Account should be reported with a zero-dollar balance.

60.     On or about early December 2023, Plaintiff called Equifax to inform them that the Account was currently being disputed with Wells Fargo and any activity/transactions that appeared under the Account were fraudulent.

61.     Plaintiff advised Equifax to address the inaccurate reporting and that the Account should be reported with a zero-dollar balance.

62.     On or about early December 2023, Plaintiff called Trans Union to inform them that the Account was currently being disputed with Wells Fargo and any activity/transactions that appeared under the Account were fraudulent.

63.     Plaintiff advised Trans Union to address the inaccurate reporting and that the Account should be reported with a zero-dollar balance.

64.     On or about December 20, 2023, Plaintiff received copies of his credit report from Equifax, Experian, and Trans Union.

65.     Equifax, Experian, and Trans Union each communicated Plaintiff's dispute to Wells Fargo.

66.     Wells Fargo received Plaintiff's first dispute from Equifax, Experian, and Trans Union.

67.     As of December 2023, Equifax, Experian, and Trans Union each failed to report the Account as disputed following Plaintiff notifying each of the reporting bureaus that the Account was disputed to Wells Fargo due to fraudulent activity/

### PLAINTIFF'S SECOND DISPUTE TO WELLS FARGO

68.     On or about early December 2023, following the receipt of the initial letter notifying Plaintiff that Wells Fargo would not be fixing any of the fraudulent charges reported on the Account, Plaintiff *again* called Wells Fargo to request *another* investigation into the fraudulent charges and request the Account reflect an accurate balance (hereinafter, "Plaintiff's Second Dispute").

69.     The Wells Fargo representative Plaintiff spoke to was not cooperative and refused to give Plaintiff their full name for the purposes of keeping accurate

records.

70.     Plaintiff requested a new investigation be opened for the Account and the fraudulent charges/transactions being reported.

71.     On or about December 18, 2023, Plaintiff *again* called Wells Fargo to inquire why he had not heard any updates regarding the aforementioned second investigation he requested for the Account on early December 2023.

72.     The Wells Fargo representative informed him that there was no indication in their records that he requested a second investigation or that he had requested a second investigation.

73.     Plaintiff *again* requested that a second investigation be opened, meaning he had to recount all the events that occurred regarding the Account and fraud up until that point *again* to the representative.

74.     The Wells Fargo representative responded by saying they would open a new reconsideration of the case for the Account.

75.     On or about December 20, 2023, Wells Fargo sent a letter to Plaintiff acknowledging receipt of Plaintiff's Second Dispute but advising that Wells Fargo verified the fraudulent charges as valid/authorized and that the Account was reported correctly.

76.     More specifically, the letter from Wells Fargo asserted that Plaintiff was responsible for the fraudulent transactions on the Account and that his claim had been effectively closed.

77.     On or about December 20, 2023, Plaintiff received a phone call and

voicemail from another Wells Fargo representative. Plaintiff returned the call and was informed by the representative that the second investigation had resulted in Wells Fargo *once again* verifying the fraudulent charges as valid/authorized and refusing to correct the balance reflected on the Account.

78.   Plaintiff expressed his dissatisfaction with the results of the second investigation to which the Wells Fargo representative responded by informing Plaintiff they would re-open the case *again*.

79.   On or about January 11, 2024, Plaintiff received a letter from Wells Fargo *again* advising that Wells Fargo verified the fraudulent charges as valid/authorized and that the Account was reported correctly.

80.   More specifically, the letter from Wells Fargo asserted that Plaintiff was responsible for the fraudulent transactions on the Account because the allege that the card had been delivered to Plaintiff's address, it had been activated by a phone number associated with Plaintiff, and his request for reimbursement for the disputed transactions was denied.

81.   Clearly Wells Fargo failed to conduct a reasonable investigation in response to Plaintiff's Second Dispute, because if Wells Fargo had conducted reasonable investigations and re-investigations, Wells Fargo would have known that the charges/transactions reported on the Account were fraudulent and the Account should have been reported with a zero-dollar balance.

### PLAINTIFF'S THIRD DISPUTE WITH WELLS FARGO

82.   On or about January 10, 2024, with the assistance of his attorneys,

Plaintiff sent a letter to Wells Fargo *again* disputing Defendants' reporting of the Account, *again* advising that the Account should be reported with a zero-dollar balance, *again* requesting to be reimbursed for the disputed transactions, and *again* demanding that Wells Fargo investigate and update accordingly (hereinafter, "Plaintiff's Third Dispute").

83.     Importantly, Plaintiff provided sufficient information to allow Wells Fargo to identify Plaintiff's file including Plaintiff's full name, date of birth, last four digits of his social security number and his current address. Plaintiff also included a complete breakdown of all the disputed transactions on the Account. *See* Ex. D.

84.     On or about February 5, 2024, Wells Fargo sent a letter to Plaintiff acknowledging receipt of Plaintiff's Third Dispute. This time Wells Fargo's investigation determined that one or more of the charges made on the Account were made without Plaintiff's permission.

85.     As a result of the investigation and finding that Plaintiff's claims regarding the fraudulent activity on the Account were factual, Wells Fargo credited/reimbursed $861.20, plus all applicable finance charges and fees, to Plaintiff's Account.

## DEFENDANTS' CREDIT REPORTING OF THE ACCOUNT

86.     On or about February 5, 2024, Plaintiff obtained copies of his consumer disclosure reports from Experian, Equifax, and Trans Union respectively.

87.     Despite being made aware of the fraudulent charges several times, Wells Fargo reported the Account to Equifax, Experian, and Trans Union with inaccurate,

incomplete, and/or materially misleading information for several months.

88.     As of February 5, 2024, Equifax, Experian, and Trans Union continued reporting the Wells Fargo Account inaccurately.

89.     More specifically, as of February 5, 2024, Equifax, Experian and Trans Union reported the Account as "disputed", with an incorrect balance, and/or "past due".

90.     Plaintiff was not responsible for any transactions or past due balance on the Account since he first opened the Account in early November, therefore, Wells Fargo, Equifax, Experian and Trans Union should have reported the account with a $0.00 balance following the several disputes by Plaintiff.

91.     As such, it is inaccurate and/or materially misleading to report the Account as "disputed", with an incorrect balance, and/or "past due".

92.     On or about March 15, 2024, Plaintiff obtained another set of copies of his consumer disclosure reports from Experian, Equifax, and Trans Union respectively.

93.     Despite being made aware of the fraudulent charges several times, Wells Fargo reported the Account to Equifax, Experian, and Trans Union with inaccurate, incomplete, and/or materially misleading information for several months.

94.     As of March 15, 2024, Equifax, Experian, and Trans Union continued reporting the Wells Fargo Account inaccurately.

95.     More specifically, as of March 15, 2024, Equifax, Experian and Trans Union reported the Account as "disputed", with an incorrect balance, and/or "past

due".

96.     Plaintiff was not responsible for any transactions or past due balance on the Account since he first opened the Account in early November, therefore, Wells Fargo, Equifax, Experian and Trans Union should have reported the account with a $0.00 balance following the several disputes by Plaintiff.

97.     As such, it is inaccurate and/or materially misleading to continue reporting the Account as "disputed", with an incorrect balance, and/or "past due".

## DAMAGES

98.     As a result of Defendants' unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event could obtain financing.

99.     Overall, Plaintiff suffered damage to his credit reputation as a result of Defendants' conduct.

100.    Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

101.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

102.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

103.    Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite reporting the fraudulent activity on the Account in a timely manner and performing his obligations under such agreements, Plaintiff must simply endure Defendants' unlawful reporting of the Account.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT –**
<u>**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**</u>
**(as to Wells Fargo)**

Plaintiff re-alleges paragraphs one (1) through one hundred and three (103) as if fully restated herein and further states as follows:

104.    Wells Fargo is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and

Trans Union correct the Account on Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

105.    Despite Plaintiff disputing the fraudulent activity on the Account no later than November 2023, Wells Fargo failed to report the Account to the national credit bureaus as zero-dollar balance owed, and instead, reported the Account as "disputed", with an incorrect balance, and/or "past due".

106.    Further, Wells Fargo reported the Account as "disputed", with an incorrect balance, and/or "past due".

107.    In or around November 2023, Wells Fargo received notice of Plaintiff's First Dispute.

108.    Also, in or around early December 2023, Wells Fargo received notice of Plaintiff's First Dispute from Equifax, Experian, and Trans Union.

109.    Following Plaintiff's First Dispute, Wells Fargo confirmed and/or verified its false reporting to Equifax, Experian, and Trans Union showing that the Account was "disputed", with an incorrect balance, and/or "past due", and Wells Fargo still failed to report the Account with a zero-dollar balance due.

110.    As such, it is inaccurate and/or materially misleading to report that the Account was "disputed", with an incorrect balance, and/or "past due".

111.    Wells Fargo's refusal to request that Equifax, Experian, and Trans Union correct the tradeline associated with the Account was intentionally, willfully, and knowingly done as Wells Fargo clearly possessed knowledge of the fraudulent activity on the Account as reported by Plaintiff.

112.   Wells Fargo's re-investigations were not conducted in good faith.

113.   Wells Fargo's re-investigations were not conducted reasonably.

114.   Wells Fargo's re-investigations were not conducted using all information reasonably available to Wells Fargo.

115.   As a result of Wells Fargo's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making additional credit applications as he believed he would not be able to obtain favorable credit terms as a result of Wells Fargo's derogatory and continued reporting of the Account and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

116.   Wells Fargo's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

117.   Wells Fargo's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**

**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(as to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred and three (103) as if fully restated herein and further states as follows:

118.     Equifax, Experian, Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

119.     Equifax, Experian, Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

120.     Despite Plaintiff's repeated disputes advising Wells Fargo of the fraudulent activity on the Account in a timely manner and despite Plaintiff's disputes advising Equifax, Experian, Trans Union of the same, Equifax, Experian, and Trans Union continued to unlawfully report the Account with excessive balances, as "disputed", with an incorrect balance, and/or "past due",  resulting in the Account being reported as a derogatory, negative, or adverse accounts.

121.     Such reporting of the Account is false and evidences Equifax's, Experian's, and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

122.     Further, despite Plaintiff disputing the fraudulent activity to Wells Fargo—and despite Plaintiff notifying Equifax, Experian, and Trans Union of the

same through Plaintiff's First Dispute to Equifax, Experian, and Trans Union—
Equifax, Experian, and Trans Union continued to report the Account as "disputed",
with an incorrect balance, and/or "past due", and Wells Fargo still failed to report the
Account with a zero-dollar balance due.

123.    Between December 2023 and the date of this Complaint, Equifax,
Experian, and Trans Union each generated and published Plaintiff's credit reports to
Plaintiff's creditors and potential lenders including the above-referenced inaccurate,
incomplete, and/or materially misleading information.

124.    More specifically, between December 2023 and the date of this
Complaint, Equifax generated and published Plaintiff's Equifax credit reports to
Advantage Credit Inc. and Capital One Bank USA NA at minimum, in addition to
others.

125.    Similarly, between December 2023 and the date of this Complaint,
Experian generated and published Plaintiff's Experian credit reports to Advantage
Credit Inc. and Experian Business Credit at minimum, in addition to others.

126.    Similarly, between December 2023 and the date of this Complaint,
Trans Union generated and published Plaintiff's Trans Union credit reports to Bank
of America and Capital One at minimum, in addition to others.

127.    Overall, Equifax, Experian, and Trans Union willfully and/or
negligently failed to establish or follow reasonable procedures to assure maximum
possible accuracy of Plaintiff's credit reports and credit files when re-investigating
Plaintiff's disputes of the above-referenced inaccuracies contained in his Equifax,

Experian, and Trans Union credit reports and credit files.

128.     As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making additional credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

129.     Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

130.     Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)**
**(as to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred and three (103) as if fully restated herein and further states as follows:

131.     Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to promptly notify Wells Fargo of each of Plaintiff's disputes including all relevant information; (3) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (4) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

132.     Specifically, Equifax, Experian, and Trans Union willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

133.     For example, after receiving Plaintiff's First Dispute to Equifax, Experian, and Trans Union each failed to notify Wells Fargo of Plaintiff's dispute and failed to conduct any investigation or re-investigation regarding Plaintiff's First Dispute.

134.     Furthermore, rather than conduct its own, independent re-investigation regarding Plaintiff's First Dispute to Equifax, Experian, and Trans Union solely relied on Wells Fargo's blanket and parroted assertions that they were entitled to report the Account with derogatory and late payment information, including but not limited to the inaccurate, incomplete, and misleading reporting of the Account with an erroneous

charge-off balance amount.

135.    Equifax, Experian, and Trans Union did not request any documents from Wells Fargo corroborating information furnished and/or verified by Wells Fargo regarding Plaintiff and the Account in response to any of Plaintiff's disputes, and Equifax, Experian, and Trans Union wholly ignored the documents submitted by Plaintiff with his repeated disputes.

136.    Equifax's, Experian's, and Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

137.    Despite receiving Plaintiff's First, Second, and Third Disputes, each of which explained that Plaintiff was disputing Wells Fargo's reporting of fraudulent activity on the Account, allowing Equifax, Experian, and Trans Union to determine that the Account must be corrected on Plaintiff's credit reports and credit file, Equifax, Experian, and Trans Union *continued* to report the Account as "disputed", with an incorrect balance, and/or "past due", and/or failed to report the Account with a zero-dollar balance due.

138.    As such, Equifax's, Experian's, and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Equifax, Experian, and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

139.    Such reporting is false and evidences Equifax and Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

140.    Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

141.    Equifax's, Experian's, and Trans Union's reinvestigations merely copied, parroted, and relied upon the inaccurate Accounts information conveyed by Wells Fargo.

142.    Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

143.    Equifax's, Experian's, and Trans Union's reinvestigation procedures are unreasonable.

144.    Equifax's, Experian's, and Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax, Experian and Trans Union.

145.    Equifax's, Experian's, and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

146.    As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making additional credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting

in the Account being reported as a derogatory, negative, or adverse tradeline accounts.

147.     Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

148.     Equifax's, Experian's, and Trans Union's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT ONE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORDA STATUTES, SECTIONS 559.72(7)
### (as to Wells Fargo)

Plaintiff re-alleges paragraphs one (1) through fifty-six (56) as if fully restated herein and further states as follows:

149.     Defendant Wells Fargo is subject to, and violated the provisions of, Florida Statutes, Section 559.55(7) by attempting collecting a consumer debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

150.     Specifically, Wells Fargo possessed actual knowledge of Plaintiff's timely reporting the Account as fraudulent and disputing of all the charges made on the Account.

151.     Despite possessing the immediately-aforementioned knowledge, Wells Fargo communicated with Plaintiff several times in its attempts to collect the Debt.

152.    Each time, Plaintiff received a communication advising that Wells Fargo denied his requests to mark the transactions as fraudulent, denied his requests for reimbursement for fraudulent charges, and that the balance on his Account was being reported inaccurately.

153.    Additionally, Wells Fargo placed at least two (2) calls directly to Plaintiff's cellular telephone in an attempt to collect the Debt.

154.    Defendant made each communication in an attempt to abuse and harass Plaintiff into paying the Debt by leading Plaintiff to believe that despite Plaintiff's reporting of the fraudulent activity on the Account, Defendants could and would continue to communicate with Plaintiff in an attempt to collect the Debt— circumventing Plaintiff's evidence that the charges on the Account as fraudulent— unless and until Plaintiff made payment to Defendant on the Debt.

155.    In other words, Defendant's conduct served no purpose other than to wrench payment from Plaintiff during the pendency of his disputes with Defendants'.

156.    Defendants' willful violation of, inter alia, the Florida Consumer Collection Practices Act as a means to collect the Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

157.    As a direct and proximate result of Defendants' action, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORDA STATUTES, SECTIONS 559.72(9)**
**(as to Wells Fargo)**

Plaintiff re-alleges paragraphs one (1) through fifty-six (56) as if fully restated herein and further states as follows:

158.    Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Debt with knowledge that the Debt is not legitimate or by asserting the existence of a legal right when Defendant knew that the right does not exist.

159.    Specifically, Wells Fargo possessed actual knowledge of Plaintiff's timely reporting the Account as fraudulent and disputing of all the charges made on the Account.

160.    Despite possessing the immediately-aforementioned knowledge, Wells Fargo communicated with Plaintiff several times in its attempts to collect the Debt.

161.    Each time, Plaintiff received a communication advising that Wells Fargo denied his requests to mark the transactions as fraudulent, denied his requests for reimbursement for fraudulent charges, and that the balance on his Account was being reported inaccurately.

162.    Additionally, Wells Fargo placed at least two (2) calls directly to Plaintiff's cellular telephone in an attempt to collect the Debt.

163.    During the course of Defendant's attempts to collect the Debt, Defendant knowingly and falsely asserted that it possessed the legal right to collect the Debt from Plaintiff personally despite knowing of Defendant's reporting of the fraudulent activity on the Account, Defendant could and would continue to communicate with Plaintiff in an attempt to collect the Debt—circumventing Plaintiff's evidence that the charges

on the Account as fraudulent—unless and until Plaintiff made payment to Defendant on the Debt.  Defendants knew they did not possess such a right.

164.    As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.      Judgment against Wells Fargo, Equifax, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

b.      Actual damages in an amount to be determined at trial;

c.      Compensatory damages in an amount to be determined at trial;

d.      Punitive damages in an amount to be determined at trial;

e.      An award of attorney's fees and costs; and

f.      Any other such relief the Court may deem proper.

g.      Judgment against Wells Fargo for maximum statutory damages for violations of the FCCPA.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—

pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*
Jon P. Dubbeld, Esq. FBN 105869
Aaron M. Swift, Esq., FBN 0093088
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
jdubbeld@swift-law.com
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*